USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/6/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                           :
LAMDA SOLUTIONS CORP.,                   :
                                           :
                               Plaintiff,   :                  1:21-cv-2259-GHW
                                           :
              -against-                            :                  MEMORANDUM
                                           :                OPINION AND ORDER
HSBC BANK USA, N.A.,                       :
                                           :
                              Defendant.   :
                                           :
------------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

To help broker the sale of 80,000 metric tons of iron ore from Mexico to China, Plaintiff Lamda Solutions Corp. ("Lamda") allegedly entered into a verbal agreement with Defendant HSBC Bank USA, N.A. ("HSBC") whereby HSBC promised to facilitate the international transaction. Lamda alleges that HSBC broke its promise, causing Lamda to lose over $1 million in profits and other expenses. HSBC has moved to dismiss Lamda's claims. Because Lamda failed to plead that HSBC entered into a binding agreement, HSBC's motion to dismiss is GRANTED.

## I. BACKGROUND[1]

### A. Facts

Lamda is a New York company that operates as a broker. Complaint ("Compl."), Dkt. No 1, Ex. B ¶¶ 1–2. Three months after opening a checking account with HSBC, Lamda informed the branch manager of HSBC's Yonkers branch that Lamda had an opportunity to sell 80,000 tons of Mexican iron ore to China. *Id.* ¶¶ 5–6. Lamda explained that it wanted to pay for the shipments

---

[1] Unless otherwise noted, the facts are taken from the complaint and are accepted as true for the purposes of this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"through documentary letters of credit to be issued by Chinese banks acceptable to HSBC, with HSBC to then issue back-to-back letters of credit to Lamda's iron ore supplier based in Mexico." *Id.* ¶ 6. The branch manager told Lamda that HSBC's New York City office handled international banking transactions and asked Lamda to send him an email detailing the proposed transaction. *Id.* ¶ 7. Lamda sent the requested email on July 16, 2019. *Id.* ¶ 8. The branch manager consulted with HSBC's New York City office and told Lamda that HSBC was "very interested in the proposal." *Id.*

Lamda then had a meeting at HSBC's New York City office, where Lamda discussed the transaction in more detail. *Id.* ¶ 9. Following the meeting, Lamda alleges that HSBC "confirmed its interest in proceeding with the transaction." *Id.* ¶ 10. However, HSBC explained that "instead of back-to-back letters of credit, HSBC wished to pursue a more conservative approach, and that HSBC would prefer instead to issue an assignment of proceeds of the letter of credit that would be opened by the Chinese bank." *Id.*

Lamda asserts that it "was open to this alternative approach and received an HSBC Assignment of Proceeds form." *Id.* ¶ 11. Lamda noticed that the form contained incorrect fields and notified HSBC of the issue. *Id.* HSBC acknowledged the problems with the form and modified it accordingly. *Id.* Lamda's account was then transferred from the Yonkers branch to HSBC's New York City headquarters. *Id.* ¶ 12. Lamda alleges that its account was transferred pursuant to "the parties' verbal agreement to process this type of international trade." *Id.* HSBC advised Lamda that accounts held at HSBC's headquarters were expected to exceed $100 million in annual revenues. *Id.*

On October 19, 2019, Lamda signed a purchase contract with Terran Division Energia S.A. de C.V. for the purchase of thirteen shipments of 80,000 tons of iron ore. *Id.* ¶ 13. To comply with Lamda's alleged agreement with HSBC, the payment clause of the purchase agreement stated that Lamda would "irrevocably assign proceeds of an irrevocable letter of credit." *Id.* Lamda notified HSBC of the purchase agreement because HSBC had requested that Lamda keep HSBC updated

regarding the transaction and anticipated closing dates.  *Id.*  The purchase agreement was later assigned to Terrain Energy S.A. de C.V ("Terrain").  *Id.*

On June 12, 2020, Lamda entered a contract with Xiamen Great Corporation ("Xiamen") to purchase the thirteen shipments of iron ore.  *Id.* ¶ 14.  The contract provided that Xiamen would instruct the Industrial Commercial Bank of China ("ICBC") to issue an irrevocable letter of credit for $6,340,680.00.  *Id.*  The contract also required Lamda to pay $30,000 within five days to cover the cost of opening a letter of credit with ICBC.  *Id.*  Before issuing the letter of credit, Xiamen sent several drafts to Lamda to ensure that the letter of credit would comply with HSBC's requirements.  *Id.* ¶ 15.  Lamda discussed these developments with HSBC's trade team.  *Id.*

On June 26, 2020, Lamda wired $30,000 to ICBC through its HSBC account.  *Id.* ¶ 16.  Lamda alleges that an HSBC representative congratulated Lamda for wiring the money because he believed that the payment showed that Lamda was growing its business as it had hoped.  *Id.* ¶ 17.

On July 6, 2020, "ICBC issued Letter of Credit No. LC35401C001358 in the amount of $6,340,680.00, to HSBC in New York in favor of Lamda as beneficiary."  *Id.* ¶ 18.  The next day, Lamda "completed and submitted a request for assignment of proceeds, in the amount of $3,424,000.00, in favor of Terrain."  *Id.* ¶ 19.  A week after receiving the request, HSBC sent Lamda an email asking Lamda to clarify how it calculated the purchase price for the iron ore.  *Id.* ¶ 20.  Lamda replied, explaining how it reached an agreement with Terrain on the purchase price.  *Id.* ¶ 21.  HSBC thanked Lamda for the detailed response and told Lamda that it would forward the information to HSBC's operations team.  *Id.* ¶ 22.  The next day, HSBC informed Lamda that it would not issue the requested assignment of proceeds.  *Id.* ¶ 23.  Lamda asked HSBC to reconsider its decision and sought further clarification as to HSBC's position.  *Id.* ¶¶ 24–25.  HSBC did not respond.  *Id.*

Lamda subsequently sent notice of contract cancellations to both Xiamen and Terrain.  *Id.*

¶ 26.  Lamda alleges that it "lost not only the $30,000.00 it had advanced to ICBC on behalf of Xiamen to open the letter of credit, but also profits of approximately $1–1.5 million that Lamda had anticipated earning on this first shipment of Mexican iron ore . . . plus similar lost profits on each of the subsequent 12 shipments covered by and anticipated under these same contracts."  *Id.* ¶ 27.

### B. Procedural History

Lamda commenced this action in New York state court against HSBC on February 9, 2021. *See generally id.*  Lamda brought claims for breach of contract, promissory estoppel, and violation of New York's Uniform Commercial Code section 5-114.  *Id.*  HSBC removed the case to federal court on March 16, 2021.  Dkt. No. 1.  On May 10, 2021, HSBC moved to dismiss Lamda's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Dkt. Nos. 20–22.  Lamda filed a brief in opposition on June 1, 2021.  Dkt. No 25.  HSBC's reply was filed shortly thereafter.  Dkt. No. 26.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S.

at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). In that context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). As the Second Circuit recently reaffirmed in *Lynch*, "[i]t is well established that a pleading is deemed to include any 'written instrument' that is attached to it as

'an exhibit,' or is incorporated in it by reference." *Lynch*, 952 F.3d at 79 (citations omitted).  Courts may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

A court can also consider documents that are "integral to" the complaint. *Id.*  In order for a document to meet this exception to the general principle that a court may not consider documents outside of the pleadings without converting the motion to one for summary judgment, the complaint must rely heavily upon its terms and effects. *See DiFolco*, 622 F.3d at 111 ("Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effects, thereby rendering the document integral to the complaint.") (internal quotation marks omitted)).  "However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.*  (internal quotation marks omitted) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).  "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.*  "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157.  The Second Circuit has "recognized the applicability of this exception where the documents consisted of emails that were part of a negotiation exchange that the plaintiff identified as the basis for its good faith and fair dealing claim, or consisted of contracts referenced in the complaint which were essential to the claims." *United States ex rel. Foreman v. AECOM*, No. 20-2756-CV, 2021 WL 5406437, at *11 (2d Cir. Nov. 19, 2021) (citations omitted) (first citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422

(2d Cir. 2011); and then citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 n.4 (2d Cir. 2002)).

"Where a district court considers material outside of the pleadings that is not attached to the complaint, incorporated by reference, or integral to the complaint, the district court, to decide the issue on the merits, must convert the motion into one for summary judgment." *Id.* "This requirement 'deters trial courts from engaging in factfinding when ruling on a motion to dismiss and ensures that when a trial judge considers evidence [outside] the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it.'" *Id.* (alteration in original) (quoting *Glob. Network Commc'ns, Inc.*, 458 F.3d at 155). "A district court therefore 'errs when it consider[s] affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.'" *Id.* (alteration in original) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000)).

Here, HSBC has attached the assignment of proceeds form that Lamda referred to in the complaint, but which was not included in the complaint. Although Lamda states that it "received an HSBC Assignment of Proceeds form" and later "submitted a request for assignment of proceeds, in the amount of $3,424,000.00," the complaint does not rely heavily on the terms and effects of the form, and the Court cannot conclude that they are integral to the complaint. Compl. ¶¶ 11, 19. The complaint does not assert that the assignment of proceeds form created any legal obligations between the parties.[2] Instead, Lamda specifically pleads that it had a "verbal agreement" with HSBC prior to submitting the assignment of proceeds form. *See id.* ¶ 12. Lamda's claims are based upon HSBC's purported violation of the verbal agreement. Accordingly, the Court has not considered the

---

[2] To the extent that Lamda argues in its opposition brief that it accepted HSBC's offer to facilitate the international transaction by submitting the assignment of proceeds form, that allegation is not supported in the complaint and is directly contradicted by Lamda's argument that the assignment of proceeds form was merely a ministerial form issued to implement the parties' previous verbal agreement. Dkt. No. 25 ("Opp'n") at 9, 11–12. As pleaded, the complaint does not rely heavily upon the terms and effects of the assignment of proceeds form.

assignment of proceeds form in deciding this motion.

### III. DISCUSSION

#### A. Breach of Contract

Lamda's breach of contract claim against HSBC is not pleaded adequately. "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121 (N.Y. App. Div. 1st Dep't 2009). "A complaint 'fails to sufficiently plead the existence of a contract' if it does not provide 'factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms.' Conclusory allegations that a contract existed or that it was breached do not suffice." *Emerald Town Car of Pearl River, LLC v. Philadelphia Indem. Ins. Co.*, No. 16 CIV. 1099, 2017 WL 1383773, at *7 (S.D.N.Y. Apr. 12, 2017) (citation omitted) (quoting *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt.*, L.L.C., 455 F. App'x 102, 104 (2d Cir. 2012) (summary order)). Accordingly, a breach of contract claim "that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) (quoting *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

Lamda's complaint fails to allege sufficient facts to show that an enforceable agreement existed between Lamda and HSBC. First, Lamda has not sufficiently pleaded an offer. "In considering whether a binding contract exists, '[t]he first step . . . is to determine whether there is a sufficiently definite offer such that its unequivocal acceptance will give rise to an enforceable contract.'" *Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100, 106 (2018) (quoting *Matter of Express*

8

*Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589–90 (1999)). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981); *see also Kolchins*, 31 N.Y.3d at 107. Lamda asserts that it sufficiently alleges an offer by "pleading that HSBC 'confirmed its interest in proceeding with the transaction' and explained it would prefer to 'issue an assignment of proceeds of the letter of credit.'" Opp'n at 9 (quoting Compl. ¶ 10). HSBC's expression of "interest in proceeding with the transaction" is not sufficiently definite such that an acceptance by Lamda would create an enforceable contract, particularly because HSBC explained that it would prefer to facilitate the transaction through an alternative approach. As pleaded, the complaint does not establish that HSBC made a sufficiently definite offer.

Nor has Lamda sufficiently pleaded an acceptance. "As a general rule, in order for an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal." *Kolchins v. Evolution Markets, Inc.*, 8 N.Y.S.3d 1, 9 (App. Div. 1st Dep't 2015), *aff'd*, 31 N.Y.3d 100 (N.Y. 2018) (quoting *King v. King*, 617 N.Y.S.2d 593, 594 (App. Div. 3d Dep't 1994)). Lamda argues that it pleaded an acceptance by "pleading that 'Lamda was open to this alternative approach.'" Opp'n at 9. Being "open to" an offer is a far cry from unequivocally accepting an offer. At most, the complaint merely establishes that Lamda was not opposed to the alternative approach, but does not demonstrate that Lamda agreed to enter a contract under those terms. Consequently, because Lamda did not sufficiently allege the existence of an enforceable agreement, the Court dismisses Lamda's breach of contract claim.

### B. Promissory Estoppel

Lamda's claim under the doctrine of promissory estoppel is also dismissed. "A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements:

1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).

As an initial matter, Defendant argues that the promissory estoppel claim is duplicative of the breach-of-contract claim and therefore must be dismissed. "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." *Dart Brokerage Corp. v. Am. Com. Ins. Co.*, No. 13 CIV. 04015, 2013 WL 5966901, at *2 (S.D.N.Y. Nov. 7, 2013) (alteration omitted) (quoting *Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)). Still, "it is also well-established that plaintiffs who allege the existence of a valid contract may nonetheless plead the alternative theories of promissory estoppel and breach of contract when the defendant does not concede the enforceability of such contract." *Pers. Watercraft Prod. SARL v. Robinson*, No. 16-CV-9771, 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (internal quotation marks and alterations omitted) (collecting cases). Here, HSBC disputes the existence of the alleged contract. In light of HSBC's challenge to the existence of a valid and enforceable contract, Lamda may plead alternative claims for promissory estoppel.

Although Lamda may plead a promissory estoppel claim, Lamda's allegations are insufficient to state a claim for promissory estoppel because the complaint fails to allege a clear and unambiguous promise. Lamda argues that HSBC promised to issue an assignment of proceeds to Lamda's Mexican iron ore supplier. Opp'n at 20. However, the complaint does not allege that HSBC promised to issue an assignment of proceeds to Lamda's Mexican iron ore supplier, only that HSBC stated that it would be "willing to" issue an assignment of proceeds if certain necessary preconditions were met. *See* Compl. ¶¶ 41 ("Plaintiff was given promises and assurances by HSBC's representatives that HSBC would be willing to issue to Plaintiff's Mexican iron ore supplier an

assignment of proceeds from an acceptable bank issuing the irrevocable letter of credit."), 43 ("As the deal progressed, Plaintiff continued to receive promises and even active encouragement from HSBC, including that if the anticipated Chinese buyer of this iron ore, Xiamen, issued through ICBC an acceptable irrevocable letter of credit to HSBC, listing Plaintiff as the beneficiary, HSBC would then be willing to issue an assignment of those proceeds as directed, to Plaintiff's Mexican iron ore supplier."); *see also* Opp'n at 20 ("Lamda also alleged that HSBC promised it would issue to Lamda's Mexican iron ore supplier an assignment of proceeds from an acceptable bank issuing the irrevocable letter of credit, and that if the anticipated Chinese buyer of the iron ore, Xiamen, issued an acceptable irrevocable letter of credit through ICBC to HSBC, listing Lamda as the beneficiary, *HSBC would be willing to issue an assignment of those proceeds as directed*, to Lamda's iron ore supplier." (emphasis added)). "[A] party *willing to* act is merely 'inclined or favorably disposed in mind' to do so, which . . . falls short of a declaration to do or not do, as required by a claim for promissory estoppel." *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 448 (S.D.N.Y. 2006) (citation omitted) (quoting Webster's Ninth New Collegiate Dictionary 1350 (9th ed. 1985)). The complaint lacks any allegation that HSBC promised to issue the assignment of proceeds if Lamda met the preconditions. Accordingly, the complaint fails to allege a clear and unambiguous promise.

Alternatively, Lamda argues that the complaint adequately pleads a promise because it alleges that HSBC made a "verbal agreement to process this type of international trade." Compl. ¶ 12. This allegation merely states a legal conclusion—that HSBC made a verbal agreement—without any factual enhancement to support an inference that HSBC made a clear an unambiguous promise, much less a binding agreement. Further, the allegation that HSBC agreed to "process this type of international trade" is too indefinite to establish that HSBC made a specific promise to issue an assignment of proceeds to Lamda's Mexican iron ore supplier. "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel." *Bd. of Trustees ex rel. Gen. Ret. Sys.*

11

*of Detroit v. BNY Mellon, N.A.*, No. 11 CIV. 6345, 2012 WL 3930112, at *6 (S.D.N.Y. Sept. 10, 2012). Further, as explained above, the specific allegations in the complaint relating to the alleged promise establish that HSBC merely stated a willingness to consider issuing an assignment of proceeds, but did not promise to do so. For these reasons, Lamda's promissory estoppel claim is dismissed.

Defendant also argues that Lamda has not adequately plead reasonable reliance on the alleged promises. Because the Court concludes that Lamda failed to sufficiently plead a clear and unambiguous promise, the Court need not reach this issue.

### C.     Claim for Relief Under U.C.C. § 5-114

Finally, Lamda alleges that HSBC violated section 5-114 of New York's Uniform Commercial Code by refusing to issue an assignment of proceeds despite previously consenting to do so. Section 5-114 provides:

> (b) A beneficiary may assign its right to part or all of the proceeds of a letter of credit. . . . .
>
> (c) An issuer or nominated person need not recognize an assignment of proceeds of a letter of credit until it consents to the assignment.
>
> (d) An issuer or nominated person has no obligation to give or withhold its consent to an assignment of proceeds of a letter of credit, but consent may not be unreasonably withheld if the assignee possesses and exhibits the letter of credit and presentation of the letter of credit is a condition to honor.

N.Y. U.C.C. Law § 5-114. A "nominated person" is "a person who the issuer: (i) designates or authorizes to pay, accept, negotiate, or otherwise give value under a letter of credit, and (ii) undertakes by agreement or custom and practice to reimburse." *Id.* § 5-102(a)(11).

The Official Comment to U.C.C. § 5-114 explains that "[b]y unconditionally consenting to such an assignment, the issuer or nominated person becomes bound . . . to pay to the assignee the assigned letter of credit proceeds that the issuer or nominated person would otherwise pay to the beneficiary or another assignee." Official Comment 3 to N.Y. U.C.C. Law § 5-114; *see also* 6 Hawkland U.C.C. Series § 5-114:5 (2021) ("Although [U.C.C. § 5-114(c)] does not indicate the effect

of consent by the issuer or nominated person, an unconditional consent is regarded as binding the person giving it . . . . Therefore, a consent to a request to acknowledge an assignment of proceeds that is not qualified with respect to the obligation of the bank is irrevocable." (citation omitted)).

Here, Lamda was the designated beneficiary of the letter of credit issued by ICBC and HSBC was the nominated bank. Compl. ¶¶ 33, 35. Lamda asserts that, as the nominated bank, HSBC was a "nominated person" for purposes of section 5-114 and that "[i]n previous discussions with Lamda, HSBC's representative had expressly agreed to honor and issue an assignment of the proceeds of this irrevocable letter of credit whose terms HSBC also approved, and HSBC had also communicated that consent to representatives of Lamda as the beneficiary of this letter of credit." *Id.* ¶¶ 35–36. Because HSBC consented, Lamda argues that HSBC was bound to issue an assignment of proceeds under section 5-114. The complaint expressly relies on HSBC's alleged consent and does not claim that HSBC improperly withheld consent under section 5-114(d). *See id.* ¶¶ 36–37.

Lamda's sole conclusory allegation that HSBC "expressly agreed" and "communicated that consent" is insufficient to plausibly state a claim that HSBC unconditionally consented to issue an assignment of proceeds. Lamda offers no factual enhancement to support this allegation. The complaint does not include any specifics, such as how the agreement was formed, or when and how consent was communicated, beside broadly alleging that HSBC gave consent during "previous discussions."

Further, more specific factual allegations in the complaint contradict Lamda's claim that HSBC expressly consented to issue an assignment of proceeds. "Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the [c]omplaint." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014) (internal citation and

13

quotation marks omitted). The complaint contains specific allegations that HSBC communicated its "interest" in facilitating the transaction and that HSBC stated that it would be "willing to" issue an assignment of proceeds if certain preconditions were met. Compl. ¶¶ 10, 41, 43. As discussed, these allegations are insufficient to establish that HSBC agreed to issue an assignment of proceeds. Further, the complaint acknowledges that Lamda received HSBC's assignment of proceeds form and states that Lamda "completed and submitted a request for assignment of proceeds." *Id.* ¶ 19. These allegations, which detail that HSBC communicated conditional interest in issuing an assignment of proceeds and that Lamda had to "request" an assignment of proceeds, are inconsistent with Lamda's conclusory allegation that HSBC expressly agreed and consented to issue an assignment of proceeds. Given Lamda's specific allegations that HSBC only communicated conditional interest, without any factual enhancement detailing HSBC's purported unconditional consent to issue an assignment of proceeds, the complaint fails to state a plausible claim for relief under U.C.C. section 5-114.

### D. Damages

Finally, HSBC moves to dismiss Lamda's claims to the extent that they seek consequential damages. Because the Court concludes that all of Lamda's claims should be dismissed, the Court need not address whether Lamda's alleged damages are available as a matter of law.

## IV. LEAVE TO AMEND

The Court grants Lamda leave to replead the dismissed claims. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," those circumstances do not apply in this case. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted). Any amended complaint must be filed no later than fourteen days from the date of this

order.

## V. CONCLUSION

For the reasons described above, HSBC's motion to dismiss is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 20.

SO ORDERED.

Dated: December 6, 2021
New York, New York

_____
GREGORY H. WOODS
United States District Judge